1   Baruch C. Cohen, Esq. (SBN 159455)
    **LAW OFFICE OF BARUCH C. COHEN**
2       A Professional Law Corporation
    4929 Wilshire Boulevard, Suite 940
3   Los Angeles, California 90010
    (323) 937-4501        Fax (323) 937-4503
4   e-mail: baruchcohen@baruchcohenesq.com

5   *Attorney For Defendant CLARK WARREN BAKER*

6

7                  UNITED STATES BANKRUPTCY COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                      LOS ANGELES DIVISION

10

11  In re                              | Case No. 2:15-BK-20351-BB

12  CLARK WARREN BAKER                  | Adv. 2:15-ap-01535-BB

13      Debtor                          | Before the Honorable Sheri Bluebond
    ─────────────────────────
14  JAMES MURTAGH, M.D.                 | Chapter 7

15      Plaintiff                       | **DEFENDANTS' OPPOSITION TO ORDER
                                        | TO SHOW CAUSE WHY DEFENDANT
16  vs.                                 | CLARK BAKER SHOULD NOT BE HELD
                                        | IN CONTEMPT FOR FAILING TO
17  CLARK WARREN BAKER                  | COMPLY WITH THIS COURT'S OCTOBER
                                        | 5, 2017 ORDER [DOCKET 291]**
18      Defendant
                                        | Date: 5-8-2018
19                                      | Time: 2:00 p.m.
                                        | Place: COURTROOM: 1539
20                                      | Calendar No. 214

21

22

23

24

25          Defendant CLARK WARREN BAKER ("Defendant") hereby opposes the *Order to Show*

26  *Cause Why Defendant Clark Baker Should Not Be Held in Contempt for Failing to Comply with this*

27  *Court's October 5, 2017 Order* [Docket 291] ("OSC").

28

1  Defendant maintains that there should be no sanction at all, since Defendant did not violate

2  this Court's Order of 10-5-2017. Accordingly, Defendant respectfully requests that the Court deny the

3  OSC re contempt.

4  As will be demonstrated below, Plaintiff specifically requested only "equal access" to various

5  sites – *__equal to the access provided to Baker's expert__*, James Pickrell, the Court's Order was limited

6  to only "equal access," & Defendant provided exactly what was ordered by this Court: "equal access."

7  Hence, there was no violation of the *Court's October 5, 2017 Order* [Docket 291].

8  1.  **DEFENDANT <u>NEVER</u> GAVE PICKRELL ADMINISTRATIVE ACCESS TO THE**

9  **WEBSITES**

10  Regarding Plaintiff's claims regarding the password for www.murtaghtruth.com, as Defendant

11  explained before in his *Opposition to Motion for Protective Order Granting Relief Concerning Access*

12  *to Various Sites and for Related Relief* ("Opposition"), and as stated very clearly in prior

13  correspondence of 6-29-2017: [Exhibit 760, p.1]

14  "In your letter of 6-28-2017, you requested to level the playing field and produce to
   you access information to www.murtaghtruth.com. Your terminology is off, but we

15  can comply nevertheless *__My client did not give Mr. Pickrell access to the website's__*
   *__dashboard (admin credentials)__*. Instead, my client directed Mr Pickrell to the website

16  and directed him to type 22634 as the password to gain access to the
   password-protected site. *__You now have what Mr. Pickrell had__*." [Emphasis added][1]

17  Defendant's declaration to the Opposition clearly stated:

18
19  "I did not give Mr. Pickrell access to the murtaghtruth website's dashboard (admin
   credentials). Instead, I directed Mr Pickrell to the website and directed him to type
   22634 as the password to gain access to the password-protected site."[2]

20
21  Pickerell's declaration to the Opposition clearly stated:

22  "Clark Baker did not give me access to the murtaghtruth website's dashboard (admin
   credentials). Instead, he directed me to the website and directed me to type 22634 as

23

24

25  _____

26  [1]A true and correct copy of Cohen's letter of 6-29-2017 is attached hereto as Exhibit "1" and
   is incorporated herein by this reference.

27  [2]A true and correct copy of Defendant's Declaration is attached hereto as Exhibit "2" and is

28  incorporated herein by this reference.

1     the password to gain access to the password-protected site."[3]

2          Mr. Cohen told Mr. Wallace emphatically, over and over again, that Pickrell was not given

3     administrative access to the murtaghtruth website's dashboard (admin credentials) and therefore

4     Plaintiff's expert does not need equal access (to a nullity and fiction). Plaintiff's request for "equal

5     access" to the website's dashboard (admin credentials) was predicated on assumptions and misquotes.

6          Defendant could not have been any clearer, that he cannot give Plaintiff what he sought since

7     he did not give his own expert Pickerell what Plaintiff thinks Defendant gave him (ie., administrative

8     access to the websites).

9     2.    **PICKRELL <u>NEVER</u> TESTIFIED THAT BAKER GAVE HIM ADMINISTRATIVE**

10          **ACCESS TO THE WEBSITES**

11         Further, Mr. Pickrell's deposition transcript [Exhibit 761] did not say anything to the contrary.

12    He did not testify that he had actual access to the murtaghtruth website's dashboard (admin

13    credentials). Plaintiff's counsel never asked him that question point-blank, and his answers never

14    concluded emphatically that he did have access.

15         Yet, Plaintiff somehow extrapolated from Pickerell's testimony that he had access to the

16    'highest levels' of www.murtaghtruth.com (and to Defendant's private Hushmail account). However,

17    Plaintiff never asked Pickerell the operative question: did Defendant give him the administrative

18    passwords, and the simple answer to that is that he did not.  Pickrell's deposition transcript [Exhibit

19    761] did not say anything to the contrary. He did not testify that he had actual access to the website's

20    dashboard (admin credentials).

21         Plaintiff's counsel never asked Pickrell that operative question point-blank, and his answers

22    never concluded emphatically that he did have security access. Mr. Cohen told Mr. Wallace

23    emphatically, over and over again, that Pickrell was not given access to the website's dashboard

24    (admin credentials) and therefore Plaintiff's expert does not need equal access (to a nullity and

25    fiction). Plaintiff's request for "equal access" to the website's dashboard (admin credentials) is

26

27         [3]A true and correct copy of Pickrell's Declaration is attached hereto as Exhibit "3" and is

28    incorporated herein by this reference.

1   predicated on assumptions and misquotes. Defense counsel could not have been any clearer.

2       Rather than seeking clarification from the Court to amend the Court order, and rather than

3   conducting additional follow-up discovery of Pickrell and/or Defendant to ask that operative question

4   regarding whether Pickrell was indeed given the Defendant's administrative security passwords,

5   Plaintiff struck again, with yet, another frivolous motion - without meeting and conferring - seeking

6   contempt and evidentiary sanctions against Defendant and his counsel for not complying with the

7   Court's 10-5-2017 order.

8       It is of great significance to read the actual testimony from the Pickrell deposition - regarding

9   each separate website - to see that he indeed never testified that he was given administrative access

10  to the websites. This is important, because Plaintiff blurs testimonies about one website with another,

11  to bamboozle and confuse the witness and the court.[4]

12      Regarding the murtaghtruth website, Pickrell explicitly testified at his deposition that he was

13  **not** given administrative access [Exhibit 984 Page 7 of 11]

14      Q.   So let's go to -- oh, did you get administrative access to any of the websites that
        are in your report?

15      A.   ***Administrative access?  Not really***.  [Emphasis added]
        Q.  So there's a website, jamesmurtaghmdtruth.com. Did you get administrative access

16      to that site?
        A.   Again, I get these various websites with similar names confused, but there was a

17      website that we got some kind of access to ***but I wouldn't necessarily call it
        administrative access because administrative access means you can go in and***

18      ***administrate it and it did not appear to me the  account we had access to had***
        ***administrative privileges***. .  [Emphasis added]

19

20  Pickrell Transcript, P.159, Lines 20-25, P. 160, Lines 1-10

21      Q.   So with James Murtagh and the truth.com you had the user name and password
        and could access it, so you could look at the website, right?  Is that right?

22      A.   Yeah.
        Q.   And that's because it's password protected, right?  Right?

23      A.   Yes.
        Q.   And it's been privatized?

24      A.   Let's call it that.
        Q.   So the public cannot access it, right?

25      A.   Correct.
        Q.   Okay.  With respect to that website, did you  have any access other than simply

26

27  ────────────────

28      [4]A true and correct copy of the Pickrell Deposition Transcript of 7-12-2017 is attached hereto
    as Exhibit "4" and is incorporated herein by this reference.

1   being able to read it? Let me back up. In your report, you go through at least five
    different types of access, including author and subscriber and owner, some others,
2   right?
    A.  Um-hmm.
3   Q.  Yes?
    A.  Yes.
4   MR. COHEN:  You're spilling over again into the bad doc.  You were on the right
    track.  You originally asked him if he had administrative access to Murtagh –
5   MR. WALLACE:  Yeah, but I'm backing up.
    Q.  So on jamesmurtaghmd.com could you, given your access, do anything other than
6   just read what was there?
    A.  ***I don't know.  I didn't try***. [Emphasis added]

7

8   Pickrell Transcript, P.162, Lines 8-25, P. 163, Lines 1-13

9           Regarding the baddocjjm website, Pickrell explicitly testified at his deposition that he was **not**

10  given administrative access P.188

11  Q.  And you got some access, some access, to baddocjjm.com?
    A.  Yes.
12  Q.  And how did you get that access?
    A.  So I may be wrong on this, but I believe that it came up in some of Dr. Murtagh's
13  papers that he believed that Clark Baker had access to this website on an
    administrative level.  I'm not sure where he got that information from, but he had done
14  some kind of test where he –
    Q.  I'm sorry, you're going off into another issue.  I want to know –
15  MR. COHEN:  I know the point of confusion, by the way.  I see exactly how there's
    a disconnect between your questions and his answer.
16  MR. WALLACE:  Okay, well, jump in.
    MR. COHEN:  Counsel was asking you which website did you have access to, correct?
17  MR. WALLACE:  Yeah.
    MR. COHEN:  Okay.  And you're discussing the experiment with bad doc.
18  BY MR. WALLACE:
    Q.  All right.  Tell me about this experiment. What was the experiment?
19  A.    The experiment was to -- Clark was told that his e-mail was listed as an
    administrator, so he wanted to try and then see if he could actually log in and
20  administrate. ***And so I didn't know what his password was***, but there was a procedure
    to request a  password.  If you look at this document on page 35, there's a button there
21  that says lost your password. ***And so he simply requested a password and got one,
    and we logged in but couldn't do anything***. [Emphasis added]

22  Pickrell Transcript, P.160, Lines 17-25, P. 161, Lines 1-24

23  Q.  So we went through the various steps in your experiment, and I had a few other
    questions. So ultimately did you determine what type of account Baker had?
24  A.  ***It was an account with no particular privileges***.
    Q.  So does that mean it was a subscriber account or some other kind of account?
25  A.   ***Not a subscriber account.  It's just a low-level administrator account.  An
    administrator with no permissions to do anything***. [Emphasis added]
26

27  Pickrell Transcript, P.188, Lines 3-14

28

3.    **PLAINTIFF'S MOTION <u>ONLY</u> REQUESTED "EQUAL ACCESS" TO THE WEBSITES**

The *Motion by Plaintiff James Murtagh, M.D.: (A) for Protective Order Granting Relief Concerning Access to Various Sites; and (B) for Related Relief* [Doc 274] filed on 8-23-2017 specifically requested only "equal access:"

> "Relief Requested. Dr. Murtagh asks that: (a) ***equal access be ordered***, such as by providing usernames and passwords (with reasonable restrictions), so that Plaintiff: (1) has access to Defendant's private Hushmail account at his convenience and at any location of his expert's choosing, not under the watchful eye of Baker and/or Cohen, (2) has access to the www.Baddocjjm.com site via the reset password recovery link, including access to the full dashboard, (3) has full access to www.jamesmurtaghmdtruth.com, including the full dashboard; and (b) the Court issue any other related relief." [Emphasis added]

Motion, p. 1, Lines 7-15.

Plaintiff's Motion's Legal argument III-A specifically requested only "equal access:"

Motion, P.4, lines 23-24.

Plaintiff's Motion's Declaration of John Wallace specifically requested only "equal access:"

> "2. Subject Matter. This Declaration concerns the need for ***equal access*** to various sites – ***equal to the access provided to Baker's expert***, James Pickrell.  [Emphasis added]

Motion, P. 9, Lines 10-11.

> "6. Plaintiff Requested Access. I wrote to Baruch Cohen, Esq., ***asking for equal access*** to hushmail. Ex. 744. [Emphasis added]

Motion, P. 9, lines 21-23.

Plaintiff's *Motion by Plaintiff James Murtagh, M.D. for Relief Based on Defendant's Violation of this Court's October 5, 2017 Order Compelling Baker to Provide **Equal Access** to Plaintiff's Expert, Including: (A) Contempt; (B) Issue, Evidentiary And/or Money Sanctions Against Baker and His Attorney; and (C) All Available Related Relief* [Doc 322] ("Motion-2") also specifically requested only "equal access:" [Emphasis added]

> "Grounds. This Motion is based on the grounds that Defendant failed to fully comply with this Court's October 5, 2017 Order - by not providing Plaintiff's expert ***the same access Baker provided his expert*** to: (a) Baker's Hushmail accounts and (b) the websites www.baddocjjm.com and www.JamesMurtaghMDTruth.com." [Emphasis

1    added]

2

3    Motion-2, P.2, Lines 5-11.

4    "1. Order. On October 5, 2017, the Court issued an Order ("Order") [Docket No. 291]
(bold added) requiring Defendant Baker to provide Plaintiff's expert "***the same level
of access***," among other things, to Baker's Hushmail accounts and the websites

5    www.baddocjjm.com and www.JamesMurtaghMDTruth.com ("Truth Website") "that
Baker provided to his own expert witness James Pickrell...in the same manner that

6    Baker provided such access to Pickrell" ("Equal Access")." [Emphasis added]

7

8    Motion-2, P. 1, lines 8-14.

9    4.    **THE COURT'S 10-5-2017 ORDER REQUIRED <u>ONLY</u> "EQUAL ACCESS" TO THE**

10    **WEBSITES**

     Nevertheless, the 10-5-2017 *Order Granting Motion for Protective Order Concerning Access*

11    *to Various Sites* [Doc 291] specifically ordered only "equal access:"

12

13    "2. Not later than 3 business days after entry hereof, defendant Clark Warren Baker
("Baker") shall provide to Bruce Anderson ("Anderson"), the expert witness employed
by plaintiff James Murtagh, M.D. ("Murtagh") in this adversary proceeding, ***the same***

14    ***level of access to the same websites***, passwords, domains, email accounts, etc. ***that
Baker provided to his own expert witness James Pickrell ("Pickrell") in the same***

15    ***manner that Baker provided such access to Pickrell***." [Emphasis added]

16

17    Order, P. 2, Lines 12-18.

18    5.    **DEFENDANT <u>COMPLIED</u> WITH THE 10-5-2017 ORDER AND GAVE PLAINTIFF**

     **THE SAME LEVEL OF ACCESS TO THE SAME WEBSITES, PASSWORDS,**

19    **DOMAINS, EMAIL ACCOUNTS, ETC. THAT BAKER PROVIDED TO PICKRELL**

20    **IN THE SAME MANNER THAT BAKER PROVIDED SUCH ACCESS TO**

21    **PICKRELL**

22    On 10-16-2017, Defendant's counsel fully complied with this Court's order and wrote

23    Plaintiff:

24    "Accordingly, regarding murtaghtruth website, my client did not give Mr. Pickrell
access to the website's dashboard (Admin credentials). Instead, my client directed Mr.

25    Pickrell to the website and directed him to type 22634 as the password to gain access
to the password-protected site. ***You now have what Mr. Pickrell had***." [Emphasis

26    added]

27

28

Defendant fully complied with the Court's 10-5-2017 ruling: he gave Plaintiff the exact same level of access ... that Baker provided to Pickrell *in the exact same manner that Baker provided such access to Pickrell*.[5]

6.    **PLAINTIFF WAS UNABLE TO CITE TO THE RECORD PROVING THAT PICKRELL TESTIFIED THAT BAKER GAVE HIM ADMINISTRATIVE ACCESS TO THE WEBSITES**

At the 3-20-2018 hearing on Motion-2, Defendant's counsel argued that Plaintiff "cherry-picked" from Pickrell's deposition testimony, and misled this Court into believing that Defendant gave him administrative credentials to the murtaghtruth website.[6]

> "MR. COHEN: The tentative presumes that Pickrell testified that he had what's called administrative access. The Plaintiff cherry picked the transcript and specifically excluded pages from the transcript where Mr. Pickrell specifically testified that he did not have administrative access. Specifically -- and there are three -- three websites in question, and the Plaintiff is quoting from page 85 of the transcript where the Plaintiff asks:
>
> > "Q And you were provided the means and access to the Hushmail, the username and password?" Which was a compound question. The expert said: "A Yeah." And from there extrapolated that somehow he was given this access, the administrative access to -- to the other websites. That's simply not the case."
>
> THE COURT: Did you give me the transcript? Did you give me the transcript, the larger section of the transcript?
>
> MR. COHEN: I did not, your Honor.
>
> THE COURT: Okay. So what, am I just supposed to take your word for it?
>
> MR. COHEN: Well, I mean, when we have -- you're right. But when we have the OSC re contempt, I believe I should be able to show you the complete transcript to show you indeed that Mr. Pickrell testified that he did not give administrative access, and what I did present was a declaration reprinted again where he states emphatically he wasn't given the administrative password to Murtaghdoc, and he wasn't given any administrative password to Baddoc, and I've -- the corollary declaration from Clark Baker that he didn't give an administrative password to Pickrell on Murtaghdoc, and he never had an administrative password to Baddoc. So, you know, to simply cherry pick from the testimony and just pull out a page when Mr. Pickrell specifically

---

[5]A true and correct copy of Cohen's letter of 10-16-2017 is attached hereto as Exhibit "5" and is incorporated herein by this reference.

[6]A true and correct copy of the Transcript of the hearing on 3-20-2018 is attached hereto as Exhibit "6" and is incorporated herein by this reference.

testified that he did not have access, I'm concerned about an order that says produce something where the Debtor didn't produce it and the expert didn't receive it.'

THE COURT: Well, I'm not sure why, frankly, putting -- putting that argument aside for a moment, I'm not sure why his access needs to be limited to whatever the expert got. If he wants to have access to this -- to this email, especially in the context of this lawsuit where he's claiming what has -- what has occurred here, now, he can't go change things with that -- with that password, but neither should he be precluded from looking at anything just because -- just because the other expert didn't get it. I'm not sure why that has to be -- now, that may be relevant to whether or not I'm holding you in contempt for not obeying the prior order, but it's -- as far as whether he ought to get it now, that to me seems like beside the point as to whether the other expert had it or not. I don't see any reason he shouldn't have it now. And then as to whether I hold you in contempt for not having previously provided it, well, yeah, I can look at that and see whether or not there's -- you know, and if there was a -- you know, if I need to -- I don't want to have a factual -- I don't have to have an evidentiary hearing on what Pickrell really meant in order to resolve it, and if it's unclear, then all right. So maybe I don't hold you in contempt for not doing it, but that doesn't mean I don't order it now."

MR. COHEN: All right. Two points in response, your Honor.

THE COURT: Uh-huh.

MR. COHEN: First of all, now you're referring to the Hushmail issue. I was -- my preliminary comments were only as to Murtaghdoc and only as to Baddoc where the Pickrell testimony was that he never had such access, and the Plaintiff's motion was we should have -- they should have whatever Pickrell had. Now, your Honor's comment as to Hushmail --

THE COURT: No, I didn't mean it as to Hushmail.

MR. COHEN: -- you should only --

THE COURT: I didn't mean it as to Hushmail. I meant that across the board. I mean, if -- you know, if your argument is he -- we didn't give that -- you know, we didn't give Pickrell that access, then, like I said, my response is then maybe I shouldn't be holding you in contempt for not doing it, but I don't see a reason not to give you -- to give Mr. Wallace's expert more access if you didn't provide it to your expert. I'm not sure that's why you say that's limited to Hushmail or why I'm just talking about Hushmail.

MR. COHEN: Well, the -- the discussion about limited was regarding the Hushmail, Mr. Wallace's comments earlier at this hearing. He only asked for 33 emails on the Hushmail account in his motion. So as to Hushmail, that access was provided in its entirety. That's what they asked for. I admit that there was a snafu and a miscommunication. I cured it the day that I discovered that there was a miscommunication, and that matter has been settled. But going after -- going back to Murtaghtruth, they only ask for what Pickrell had assets to. So they would have to bring a totally separate motion to say we want everything regarding Murtaghtruth website. That's a separate motion. As to the -- as to the Baddoc, Baker disavows any connection to Baddoc, and Pickrell disavowed having received any administrative access to Baddoc. I'm just concerned about this -- the tentative order because it's predicated on a cherry picked transcript that's not complete. I also have a concern with -- your Honor, I also have a concern regarding Hushmail. Hushmail was Clark Baker's

1   private email. The only emails that were relevant were the 33 involving Doctor
    Murtagh. He's got his personal stuff on those emails. He's got his –

2

3   THE COURT: He doesn't -- he doesn't have to take your say so that there's only 33 that
    are relevant. I'm sorry. Why should -- why in the world should he have to accept your
    representation of that?

4

5   MR. COHEN: That was what -- that was what the Plaintiff requested. The Plaintiff
    only requested 33. The Plaintiff only requested 33 emails in their motion.

6   Transcript, P.8, lines 13-25, Transcript P.9, Lines 1-25, Transcript, P. 10, Lines 1-25, Transcript, P.11,

    Lines 1-25, Transcript, P. 12, Lies 1-25.

7

8   When this Court asked Plaintiff's counsel to back up his representations to the Court that

9   Pickrell actually stated (in his declaration and/or his deposition testimony) that he had indeed received

    adminsitrative access to the murtaghtruth and baddocjjmwebsites, he was not able to do so:

10

11  MR. WALLACE: Not correct.

12  THE COURT: Yeah, where do you look at?

13  MR. WALLACE: Look at the title of the document to start. It's for equal access.
    There's no limitation to the 33. The 33 or the 35 are proof that there was access
    because it was contested, and now apparently it's admitted. But with respect to

14  Hushmail, we didn't limit it to those emails.

15  THE COURT: Okay. What did you give me, Mr. Wallace, with regard to -- you know,
    you're quoting from the report or his testimony. What did you give me? Did you give

16  me any -- a copy -- do I have a copy of the report at this point?

17  MR. WALLACE: I have a -- I submitted a copy of a number of things, a declaration
    of Baker's expert, and he testifies Baker -- he writes in his report -- I'm sorry – his

18  declaration --

19  THE COURT: Let's -- don't -- don't move off the point of what you gave me yet.

20  MR. WALLACE: Okay. So number one --

21  THE COURT: When do I have --

22  MR. WALLACE: -- Pickrell's declaration is in there. And, by the way, this whole
    discussion is many months too late. The Court issued an order. They could have asked

23  to reconsider if he suddenly found something. He then violated it, and I moved to deal
    with the violation, and now we're hearing at the hearing, not even in his opposition,

24  of all this. This was not in his opposition. He had an opportunity at various points to
    raise this – this cherry picking. It' snot cherry picking. We quoted his expert. His report

25  said -- oh, I'm sorry. We're now off of Hushmail because of their admission.

26  THE COURT: Stop talking for a minute.

27  MR. WALLACE: On Baddoc --

28

1    THE COURT: Stop talking for a minute. I'm looking at a Pickrell report back from last
May. Is there a later Pickrell report or is this the report?

2

3    MR. WALLACE: There is one report I believe that's relevant to this. You may have
had the supplemental, but I think relevant to this --

4    THE COURT: I have a report that dates back to May of 2017. Is this the report or not?

5    MR. WALLACE: Yes.

6    THE COURT: Okay. Now, in here -- now, you said you give me -- you gave me
Pickrell's declaration. Was it attached to your motion or was it free standing from your

7    motion?

8    MR. WALLACE: Jim Pickrell's declaration is Exhibit 275 to the current motion.

9    THE COURT: 275?

10   MR. WALLACE: Exhibit 275. Now, we don't have 275 exhibits in this motion. It's
just --

11

12   THE COURT: Thank God.

13   MR. WALLACE: We just consecutively numbered.

14   THE COURT: Okay.

15   MR. WALLACE: And it's Docket 322-1 at page two of four.

16   THE COURT: 322-1, okay. 322-1.

17   MR. WALLACE: But that might be a moot point because they're admitting that he
said he had access to that account, the Hushmail account.

18   MR. COHEN: No, we conceded that --

19   THE COURT: Stop. Don't talk. Stop talking. Just stop talking. I'm still looking for the
document. It's exhibit number what, 275?

20

21   MR. WALLACE: It's docket number -- oh, it's Exhibit 275.

22   THE COURT: Oh.

23   MR. WALLACE: To the current motion.

24   THE COURT: Yeah, yeah. That's what I'm looking at. Okay.

25   MR. WALLACE: Page two of four.

26   THE COURT: Okay. Let's see if that's the same as this. Page two of four. This is not
that long of a document. 275 is a very short document. So what do you mean 274?

27   MR. WALLACE: 275.

28

1    THE COURT: It's Exhibit 275. There's only --

2    MR. WALLACE: Page two of four.

3    THE COURT: Page two of four? Ah, okay.

4    MR. WALLACE: I'm sorry.

5    THE COURT: That's all right. Okay. So it's only a four-page document, and this -- this
     declaration came from what. This is -- what's -- what's the origin of this thing? This
6    was attached to his expert report or what was this thing?

7    MR. WALLACE: I think it, frankly, predated this lawsuit even. He had access a long
     time ago.

8

9    THE COURT: April 29th, 2015. Okay. All right. So he says -- my training and
     expertise -- on April 14, 2015, I received a call from Clark Baker. Baker says he's the
     subject of a lawsuit. Okay. Baker provided me with access -- this is paragraph three:

10

11        "Baker provided me with access to his private Hushmail account and
           directed me to a folder called Murtagh which contained 29 emails
12         dated between June 23, 2014 and January 24, 2015. Original copies of
           those emails still reside on Hushmail's servers today and cannot be
13         tampered or altered in any way by Baker. I compared those unalterable
           emails residing on Hushmail's servers to those copy, pasted and
14         submitted to the Court by Baker, appears to have copied and pasted
           them," et cetera.

15   These are the exhibits that Murtagh now accused Baker of evidence tampering.

16        "Based on my examination of the exhibits, it's clear the disparities can
           be largely attributed to differences between Murtagh's email client
17         which possessed emails and markup on some format basically.
           Documents in Exhibit 191 and 192 appear to be the same emails
18         displayed in two different formats."

19   Mr. Baker's choice to present emails and such and such is favorable, et cetera. This is
     about altering names. Paragraph eight, plain text. Paragraph nine:

20

21        "I also examined Murtagh's Exhibit 51, which Doctor Murtagh claims
           is an email from the emal account such and such. Based on my
22         examination of this email, there's no evidence that Baker or anyone
           else generated it."

23   And that's all this says. So what are you -- what are you telling me I should glean from
     this? ***This is not the document you're relying on to say he got admin*** – [Emphasis
24   added]

25   MR. WALLACE: Yeah. The --

26   THE COURT: -- privileges.

27   MR. WALLACE: The -- that question is -- there's also a deposition of Pickrell.

28

1    THE COURT: Okay.

2    MR. WALLACE: And he said -- I asked --

3    THE COURT: Okay. Did you give me that?

4    MR. WALLACE: Yes. I gave you that. That's --

5    THE COURT: Which exhibit is that?

6    MR. WALLACE: That's the current motion at page three, lines 16 to 18.

7    THE COURT: Okay.

8    MR. WALLACE: And I believe it's Exhibit 984 in that docket 322.

9    THE COURT: That's 11 pages.

10   MR. WALLACE: The same -- the same general docket --

11   THE COURT: Okay.

12   MR. WALLACE: -- 322, and it's Exhibit 984, which are pages from the deposition.

13   THE COURT: Okay. All right. So --

14   MR. WALLACE: So that talks about getting the user name and password.

15   THE COURT: Okay. All right. Let's see.

16        "Q And you looked at them on which server?
          A Hushmail.
17        Q Anywhere else?
          A I don't think so.
18        Q Okay. And you were provided the means of access to the Hushmail,
          the user name and the password?
19        A Yeah.
          Q So you could access it at your leisure and convenience?
20        A Well, no. I did it all in one session. I didn't save that information."

21   Objection, et cetera, et cetera.

22        "Q Did you enter the user name and password in the Hushmail
          yourself?
23        A I don't remember."

24   Okay.

25   MR. WALLACE: And then Mr. Pickrell also makes conclusions that --

26   THE COURT: Wait a minute. I'm still reading.

27   MR. WALLACE: -- require the access

28

1    THE COURT: I'm still reading. So let's go to – oh:

2         "Q Did you get administrative access to any of the websites that are in
          your report?
3         A Administrative access? Not really.
          Q So there's a website Jamesmurtaghmdtruth.com.
4
          Counsel, from the correspondence you and I had where you asked for
5         the password to the Murtaghtruth website. So because you're using the
          word 'administrator' so I see a conclusion – confusion in how we're
6         going on a different highway right now.

7         Thank you. I can see the confusion. Thank you."

8    MR. COHEN: Your Honor, it jumps from 159 to 162, the result of the cherry picking.

9    THE COURT: Yeah. ***In any event, I haven't seen anything that's helpful here***.
     [Emphasis added]
10
          "Q So with James Murtagh and the truth.com, you had the user name
11        and password you could access so you could look at the website, right?
          Is that right?
12        A Yes.
          Q And that's because it's password protected, right?
13        A Yes.
          Q And it's been privatized?
14        A Let's call it that,"

15   et cetera, et cetera. Okay.

16        "Q In your report you go through at least five different types of access,
          including author and subscriber and owners, some others, right?
17        A Uh-huh.
          Q Yes?
18        A Yes."

19   Okay.

20        "Q So on Jamesmurtaghmd, could you, given your access, do anything
          other than just read what was there?
21        A I don't know. Didn't try.
          Q Do you know if there are files that you couldn't view,"
22
     et cetera. Okay. Okay.
23
          "Q So what does it mean that a subscriber account or some other kind
24        of account -- that it was a subscriber account or some other account?

25        A Not a subscriber account. It's just a low-level administrator account,
          an administrator with no permissions to do anything."
26
     ***I don't know which account he's talking about now. I can't tell from the context***.
27   [Emphasis added]

28

1    "Q How did you determine that from the dashboard?"

2    Let's see. Okay. ***And that's all you've given me. So there's nothing really in this
     excerpt that you've given me that tells me he had administrative access. So what am
3    I missing from this -- from this?*** Yeah.  [Emphasis added]

4    MR. WALLACE: Your Honor, this has been a sequence where there was a complete
     denial, and then we prove things, and then they --
5
     THE COURT: I'm asking you a very specific question.
6
     MR. WALLACE: I'm sorry.
7
     THE COURT: ***You're trying to give me evidence in this motion that Pickrell testified
8    that he had administrative access to -- and I'm not even clear which website we're
     talking about. And so far I have asked you where have you given me any evidence
9    that he had administrative access to anything. You said you gave me his declaration.
     You said you gave me his depo transcripts. I've now read the -- the declaration. I've
10   read the excerpts you showed me from the depo transcript. I don't see him testifying
     to that. The only thing he's testified to in this is he said he -- not really did he have
11   administrative access. So is there some other place?*** [Emphasis added]

12   MR. WALLACE: No. He said not really -- did you look at anything else, not really.

13   THE COURT: No. No.

14   MR. WALLACE: But he had access to --

15   THE COURT: So let's go to:

16        "Q Oh, did you get administrative access to any of the websites that are
           in your report?
17         A Administrative access, not really."

18   MR. WALLACE: He --

19   THE COURT: So did he testify something else somewhere else that's more helpful?

20   MR. WALLACE: Yeah, because he elsewhere admits he had administrative access,
     and then he says --
21
     THE COURT: Where is that elsewhere?
22
     MR. WALLACE: -- not really.
23
     THE COURT: Where is that elsewhere?
24
     MR. WALLACE: Okay. So let's start with James Murtagh in the truth. They admitted
25   --

26   THE COURT: Where?

27   MR. WALLACE: -- he had access.

28

1    THE COURT: Where?

2    MR. WALLACE: Because they gave us the -- the password. My point is different on
that one. My point is there are hidden files. The only access to the hidden file is if you
3    know how to put in the -- put in the file name. It's hidden, and then -- and then Pickrell
talks about different files and he doesn't remember if it was on – which site it was on,
4    but he remembers reviewing files that we've never received. So we concluded -- or
maybe we're filling in the dots here, because he didn't remember that these are the
5    hidden files on the -- the website called "Truth." And that one they gave us the
password, but we can't access stuff unless we get knowledge of the hidden files that
6    are now -- that are now hidden. So that's that website.

7    THE COURT: Okay. No, stop.

8    MR. WALLACE: Okay.

9    THE COURT: So let's -- we're going to have to go over this very carefully. Okay. So
you're talking about Jamesmurtaghmdtruth. Okay. What are you saying you didn't get
10    that you need?

11    MR. WALLACE: We need to know what the hidden files are, how to access -- and we
need access to the hidden files.

12
THE COURT: Access to hidden files. And how do we know there are hidden files?
13
14    MR. WALLACE: Baker writes about them vaguely when he blogs. Murtagh -- Doctor
Murtagh has explored that. I have not personally tried to access the hidden files. I'm
15    not that familiar with it, but I know that Murtagh follows Baker's blog, and my
understanding is that's where Baker directs people or brags about things, and if they
16    want to get to the hidden file, they contact -- they call him, and they find out how to
get access.

17    THE COURT: Okay. So in his blog, Murtagh makes reference to the fact that there are
hidden files?
18
19    MR. WALLACE: Baker.

THE COURT: Concerning Baker?
20
MR. WALLACE: Baker's blog -- Baker refers to hidden files.
21
22    THE COURT: Okay. Baker. I'm sorry. Baker --

MR. WALLACE: About Murtagh.
23
24    THE COURT: Okay. Baker in his blog refers to hidden files about Murtagh. Okay.
And you've never seen those hidden files?

25    MR. WALLACE: No.

26    THE COURT: Okay. So that's the only thing you're looking for with regard to James
Murtagh and the truth.com?
27
28    MR. WALLACE: And viable access to them, yes, to identify them and have viable

1    access.

2    THE COURT: Access to hidden files. Now, does this have anything to do with
     Pickrell? Do we know whether Pickrell saw them or not? Have any way to know or
3    this has nothing to do with Pickrell?

4    MR. WALLACE: Pickrell refers to reviewing certain files Baker provided by a certain
     name. I think they're called the 2009 files. Baker changes the name every once in a
5    while. We knew them as -- we knew that there were hidden files called "the goons
     files."
6
     THE COURT: Okay. Does Pickrell refer to having reviewed any files that you have
7    not seen?

8    MR. WALLACE: Yes.

9    THE COURT: Okay. And where does Pickrell --

10   MR. WALLACE: They're called the 2009 files I believe.

11   THE COURT: Okay. So Pickrell says he referred to some 2009 files. And where does
     he say that? In his report?
12
     MR. WALLACE: I believe in deposition he said that.
13
     THE COURT: Okay. But not in the excerpt that you gave me?
14
     MR. WALLACE: No.
15
     THE COURT: Okay. Do you discussed this in your motion?
16
     MR. COHEN: No.
17
     MR. WALLACE: Well, I -- I discussed the fact that there were hidden files. I don't
18   know if I identified the 2000 -- the main 2009 files.

19   THE COURT: Okay. Well, let's see what you say in your motion. Baddoc -- truth
     website. Pickrell accessed the site, which is password protected, unreliable as to
20   whether he had administrative access, never denied he had administrative access. ***But
     you don't -- where do you even say anything about hidden files?*** [Emphasis added]
21
     MR. WALLACE: I believe that I might have used the phrase that portions of the
22   website are not readily accessible. I think that's the phrase I used.

23   THE COURT: Okay. Well, anyway, so what you want on -- Baker refers in his blog
     to hidden files about Murtagh. You want to be able to see whatever those hidden files
24   are, have access to them?

25   MR. WALLACE: Yeah.

26   THE COURT: Okay.

27   MR. WALLACE: If I may, your Honor, we have a whack-a-mole problem here
     because Baker takes a position. We spent a lot of effort disproving it. Then we have
28

1    a record just as to that issue.

2    THE COURT: Uh-huh.

3    MR. WALLACE: And --

4    THE COURT: Right.

5    MR. WALLACE: And we've done that a number of times with respect to these three
     sites.

6

7    THE COURT: Okay. All right. So you want to be able to access any hidden files. And
     as far as we unprofessionals know, that means you need administrative access in order
     to be able to get them.

8

9    MR. WALLACE: Yes.

10   THE COURT: Or passwords, but the only way to know whether he's given you all the
     relevant passwords for any hidden files would be if you have administrative access,
     correct?

11

12   MR. WALLACE: I believe so.

13   THE COURT: Okay. So that's Murtaghmd.truth, whatever. Okay. And the Baddoc
     website, what are you saying about that one?

14   MR. WALLACE: In our motion -- well, as you heard today, Baker consistently says
     "I have nothing to do with the -- with that site," and then we show that Pickrell

15   testified to an exercise he went through where he was given administrative access by
     Baker. They did something on that site, and -- or Pickrell, you know, had access and

16   did whatever he wanted, but the point is he got administrative access from Baker.

17   THE COURT: Do I have any evidence of that?

18   MR. WALLACE: Yes. I quoted --

19   THE COURT: What do I have?

20   MR. WALLACE: I quoted Pickrell. I don't have the exact cite on that, but I quoted
     him in the -- in the motion as to Baddoc from his deposition.

21

22   THE COURT: Anderson declaration, paragraph 12.

23       "Pickrell testified at his deposition that Baker was some sort of an
         administrator to Baddoc."

24   ***Okay. This is reading from your motion at page five, which, by the way, not a great
     way to get me -- you know, unless you actually give me the document to look at, it's***

25   ***really not -- you know, we got potentially a best evidence kind of a problem***.
     [Emphasis added]

26

27   MR. WALLACE: Well, I believe --

28   THE COURT: Not exactly, but --

1    MR. WALLACE: I believe we attached portions of the -- of the deposition that we quoted in the brief -- in the motion.

2

3    THE COURT: *I don't know that you did. I just went through the whole thing. But, anyway* – [Emphasis added]

4    MR. WALLACE: No, but I think it's a different exhibit number unfortunately.

5    THE COURT: Oh, I see. Okay. All right. Well, on page five of your motion, footnote 10, Baker's expert wrote that Exhibit 986 at pages three through eight:

6

7    "On May 8 I navigated to the Baddoc website login page at such and such. I then typed Baker's cb@omjs.org email address in the username field. The password field was empty, and I received a message telling me that the field was empty. I then clicked the lost your password link below the fields and found a form asking me for an email address. I filled in the form with that email address. When I pressed get new password, web page directing me to check your email the confirmation. Baker forwarded his password reset email to me which contained the following password recovery link. When I clicked on that link, my browser was redirected. So I clicked reset password as prompted to log in using my new credentials, received the login page and completed the fields with the new password."

8

9

10

11

12

13    Okay. So he was able to log in. Now, cherry picking, not cherry picking, that's pretty clear testimony he was able to get into a bad -- this Baddocjjm website.

14

15    MR. COHEN: No, that's not what he says, not what it says.

16    MR. WALLACE: He changed the password.

17    MR. COHEN: He was given a temporary password – he was given a temporary password because there was an option that said "Did you forget your password?" So you type in your email, and it sends you a temporary password, but on Baddoc, it never said that he got into Baddoc, never said it.

18

19    THE COURT: "When I clicked login, Baddoc opened up a Wordpress dashboard for Clark Baker at http.baddoc such and such and such." Yeah, it does.

20

21    MR. COHEN: It's a dashboard. It wasn't the website. It was a dashboard that opened up. It doesn't say that he had access to the site.

22    MR. WALLACE: That's what the dashboard is.

23    THE COURT: I don't know what the difference between the dashboard is. That, to me, it opened up. It let him in. And that -- you haven't given that information to Mr. Wallace's expert so that he can at least get that far.

24

25    MR. COHEN: And we gave Mr. Wallace the exact temporary password regarding Baddoc, but it's worthless because its' not administrative password. That's what he asked for.

26

27    THE COURT: Okay. Did you get a password that got you into the dashboard on Baddoc, Mr. Wallace?

28

1    MR. COHEN: No.

2    THE COURT: No, I'm not asking you, Mr. Cohen. Mr. Wallace, did you get a password that worked, a username and a password that got you into Baddoc?

3

4    MR. WALLACE: No, I don't believe so.

     MR. COHEN: Not true.

5

     MR. WALLACE: What --

6

     MR. COHEN: I gave -- I gave him that exact --

7

8    THE COURT: Yes, but that doesn't mean it will work anymore because it may have been changed. That's a different question. Whether you gave him the exact same temporary password or not is not the issue. Did you give him a password that would get him into the dashboard?

9

10   MR. COHEN: But if I don't control Baddoc, how am I supposed to answer that question?

11

12   THE COURT: The same way you gave it to the other guy, which is to forward the reset password link to let him get to the same spot that the other guy got.

13   MR. COHEN: That's exactly what I did. I gave him -- it's in my letter. It's in my opposition. I gave him exactly what Pickrell had as his temporary reset password.

14

15   THE COURT: No. No, that's different. To give somebody a temporary password which may now have been changed is different from having him go through that same exercise of -- you know, if that password doesn't get into the dashboard, then you have to go through the same exercise of forwarding the link so he can reset the password. Giving him the temporary password that once worked but doesn't work now is meaningless. So --

16

17

18   MR. COHEN: But I can't control whether it works now or not.

19   THE COURT: Yes, you can, because if it doesn't work now, you can forward -- or your client can forward the reset password link so he can get a working password. You can control that.

20

21   MR. COHEN: Not administratively. It's a temporary --

22   THE COURT: That doesn't -- I'm not talking about administratively. You just -- if he -- if he wants to be able to log into the dashboard, which is what Pickrell said he did, then he needs to have a working password to get him to that. He says the password he was given didn't get him to that. The way you get him to the dashboard, if that password doesn't work, is you get a new password by clicking on the forgot my password link and then following the login -- excuse me -- following the link that they sent to the email address that's on file to set a new temporary password.

23

24

25

26   MR. COHEN: I'm afraid and concerned, your Honor, that you're operating under a misconception how this works. The Wordpress dashboard is not the Baddoc website. It's a separate screen. That's it.

27

28

1    THE COURT: Okay.

2    MR. WALLACE: Your Honor, can I mention this?

3    THE COURT: Go ahead.

4    MR. WALLACE: The -- so Wordpress is a way you create a website. The public can
     access the website. They can see whatever you post there. You don't get access to a
5    dashboard unless you have administrative access. If what Mr. Cohen is now arguing
     is that there's a different address for the administrator and it's got the word
6    "Wordpress" in it and that's the only way you get access to the site and Baker has
     access to that address, we have a constantly shifting --
7
     MR. COHEN: No –
8
     MR. WALLACE: -- bunch of responses that are very difficult to unravel, and they --
9    one after the other, they prove to be untrue. So right now we're at that spot. I think I
     understand that Baker's working on this nuance that he -- he had access to the
10   Wordpress address by which that site was created, but he didn't have administrative
     access to the website, but it was the site that controls the website apparently. It's not
11   just the site that created it. The dashboard, as I understand in this computerese, is only
     accessible to administrators, only if you have administrative access. Whether that's to
12   the Wordpress site or the --

13   THE COURT: Okay.

14   MR. WALLACE: -- or the --

15   THE COURT: Stop. Just stop. Just stop talking. Okay. On -- on Baddoc, what you
     need to do is you need to give him a working password or enable him to set a new
16   password that gets him to the Wordpress dashboard for Clark Baker at the URL that's
     set forth on the bottom of page five at line 28 in the motion,
17   http://baddocjjm.com/wpadmin/ profile.php, and then he's called that Baddoc
     dashboard.pdf. You -- because that's what Pickrell got. So Pickrell was able to log into
18   that dashboard at that website. So you need to give him the rights to do that.

19   Whether that's admin rights or not admin, I don't care what it's called. He needs to be
     able to open up that dashboard at that website. And giving him a password that once
20   worked at some time, that's not the point. He needs to be able to get to the same spot
     that Pickrell got to. Okay. So --
21
     MR. COHEN: Your Honor, I did it, and I'll do it again.
22
     THE COURT: Good. Okay.
23
     MR. COHEN: But I've done it.
24
     THE COURT: Okay. Fine. Okay. And then on Hushmail -- okay. And on the -- the
25   truth website –

26   MR. WALLACE: Your Honor, could I clarify that last part that the Court ordered? My
     -- my thinking is like this. The Court made an original order, and Baker should provide
27   us access to Baddoc, and if he can't, he can justify it at an OSC re contempt, but right
     now we're at a different point.
28

THE COURT: No. *Because this is what you've given the evidence that Pickrell testified to. So that's what I'm going to order now*. If you do that and that doesn't work and you need more, you will need to very concretely explain to me, give me printouts, whatever, show me exactly what it is that you don't have that you need. Okay. So that's what we're going to do for now.  [Emphasis added]

Transcript, P. 13, Lines 1-25, Transcript, P. 14, Lines 1-25, Transcript, P. 15, Lines 1-25, Transcript, P. 16, Lines 1-25, Transcript, P. 17, Lines 1-25,  Transcript, P. 18, Lines 1-25, Transcript, P. 19, Lines 1-25,  Transcript, P. 20, Lines 1-25, Transcript, P. 21, Lines 1-25, Transcript, P. 22, Lines 1-25, Transcript, P. 23, Lines 1-25, Transcript, P. 24, Lines 1-25, Transcript, P. 25, Lines 1-25, Transcript, P. 26, Lines 1-25, Transcript, P. 27, Lines 1-25,  Transcript, P. 28, Lines 1-25,Transcript, P. 29, Lines 1-25, Transcript, P. 30, Lines 1-25, Transcript, P. 31, Lines 1-25, Transcript, P. 32, Lines 1-25, Transcript, P. 33, Lines 1-25, Transcript, P. 34, Lines 1-25, Transcript, P. 35, Lines 1-25, Transcript, P. 36, Lines 1-25.

7.     **PLAINTIFF SUBSEQUENTLY SOUGHT MORE THAN "EQUAL ACCESS" TO THE WEBSITES**

At the hearing on Motion-2, Plaintiff's counsel John Wallace, for the first time, ***expanded*** the scope of what he sought (ie., equal access) and asked for much more:

"MR. WALLACE: So I think what I'd like the Court to do if you'd indulge me is make it clear to Mr. Baker the concept is not that our expert has to walk in the exact shoes as if it's a property inspection, "You have to go on this path and you have to look at only those plans." Baker's expert had access. The Court ordered equal access. We should get equal access. He shouldn't be isolating only those portions that the expert looked at or he thinks the expert looked at. ***You should just give us access to the whole thing that the expert was able to see***." [Emphasis added]

Transcript, P.5, Lines 18-25, Transcript, P.6, Lines 1-2.

8.     **DEFENDANT COMPLIED WITH THIS COURT'S ORDER OF 10-16-2017 RE HUSHMAIL**

On 3-5-2018, Defendant complied with this Court's Order of 10-16-2017 and provided the complete access to the hushmail account. Defendant provided the complete email account, the email

screen name and the password.[7]

9.    **DEFENDANT COMPLIED WITH THIS COURT'S ORDER ON PLAINTIFF'S MOTION FOR RELIEF BASED ON DEFENDANT'S VIOLATION OF THIS COURT'S OCTOBER 5, 2017 ORDER** .

On 4-12-2018, Defendant filed his *Declaration re Compliance with Order on Plaintiff's Motion for Relief Based on Defendant's Violation of this Court's October 5, 2017 Order*.[8]

In it, he provided full access to the murtaghtruth website and hushmail account, and provided the same destination in the baddocjjm website that he was ordered to do by this Court.

10.    **DEFENDANT DID NOT KNOWINGLY VIOLATE THE COURT'S ORDERS**

The (primary) focus of the ***Motion for Protective Order Granting Relief Concerning Access to Various Sites and for Related Relief*** was the passwords to murtagh truth and to baddocjjm websites. Regarding those two websites, there was clearly no violation, as Defendant argued above.

As to the hushmail access, Defendant's only violation was accidental, as he did not raise any password issues in his Opposition, and only recently clarified his confusion by complying and providing Plaintiff the complete access to the hushmail account. The only violation was that it was not timely. But that mistake was explained above. It was certainly not a willful violation of the court's order.

Sanctions for civil contempt may be imposed both to "coerce future compliance" with a court order issued for another party's benefit and to "compensate for any harm that previously resulted" from the noncompliance. *Chief. Exec. Officers Clubs, Inc*., 359 B.R. 527, 534 (Bankr. S.D.N.Y. 20007) (citing *New York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998). In fashioning an appropriate remedy, courts must consider "the nature of the harm and the probable effect of alternative sanctions." Id. at 536 (citing *EEOC v. Local 28, Sheet Metal*

---

[7]A true and correct copy of Cohen's letter of 3-5-2018 is attached hereto as Exhibit "7" and is incorporated herein by this reference.

[8]A true and correct copy of the *Clark Baker's Declaration re Compliance with Order on Plaintiff's Motion for Relief Based on Defendant's Violation of this Court's October 5, 2017 Order* is attached hereto as Exhibit "8" and is incorporated herein by this reference.

1    *Workers*, 247 F.3d 333, 336 (2d Cir. 2001)).

2         Technical or unintended violations of a court order, as explained above, as well as violations

3    that are quickly remedied, as explained above, should not be punished as contempt. *Nicholas*, 457

4    B.R. at 226; *Cruz*, 254 B.R. at 816.

5         Courts have awarded attorneys' fees when a party (1) willfully disobeys a court order, and (2)

6    is found to have acted in bad faith, vexatiously, wantonly or for oppressive reasons. *Szenes*, 515 B.R.

7    at 7; *Nicholas*, 457 B.R. at 225; *Nassoko*, 405 B.R. at 520; *Dabrowski*, 257 B.R. at 416; *Watkins*, 240

8    B.R. at 678. An award of attorneys' fees may also be warranted where an offending party not only

9    willfully violated the discharge injunction but also acted in bad faith or in a vexatious or oppressive

10   manner. *Watkins v. Guardian Loan Co. of Massapequa, Inc. (In re Watkins)*, 240 B.R. 668, 678

11   (Bankr. E.D.N.Y. 1999); *DiGeronimo*, 354 B.R. at 642 (Bankr. E.D.N.Y. 2006); *Russell v. Chase*

12   *Bank USA, NA (In re Russell)*, 378 B.R. 735, 743-744 (Bankr. E.D.N.Y. 2007).

13   11.   **CONCLUSION**

14        For the above reasons,. Defendant maintains that there should be no sanction at all, since

15   Defendant did not violate this Court's Order. Accordingly, Defendant respectfully requests that the

16   Court deny the OSC re contempt.

17

18   DATED:        April 17, 2018          LAW OFFICE OF BARUCH C. COHEN
                                           A Professional Law Corporation
19
                                           By _____/S/ Baruch C. Cohen_____
20                                         Baruch C. Cohen, Esq.
                                           *Attorney for Defendant CLARK WARREN BAKER*
21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**4929 Wilshire Boulevard, Suite 940, Los Angeles CA 90010**

A true and correct copy of the foregoing document entitled **DEFENDANTS' OPPOSITION TO ORDER TO SHOW CAUSE WHY DEFENDANT CLARK BAKER SHOULD NOT BE HELD IN CONTEMPT FOR FAILING TO COMPLY WITH THIS COURT'S OCTOBER 5, 2017 ORDER [DOCKET 291]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 17, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| David P Bleistein | dbleistein@rosen-law.com, robertrosen@rosen-law.com, johnwallace@rosen-law.com, lhiraide@rosen-law.com, mail@rosen-law.com, jim@rosen-law.com, sharan@rosen-law.com |
| John Wallace | johnwallace@rosen-law.com |
| Lisa Hiraide | lhiraide@rosen-law.com |
| Baruch C Cohen | bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com |
| Alan I Nahmias | anahmias@mbnlawyers.com, jdale@mirmanbubman.com |
| Sam S Leslie (TR) | sleslie@trusteeleslie.com, sleslie@ecf.epiqsystems.com; trustee@trusteeleslie.com |
| US Trustee (LA) | ustpregion16.la.ecf@usdoj.gov |

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **April 17, 2018,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 17, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Sheri Bluebond, Roybal Federal Bldg. & Courthouse, 255 E. Temple St, Ste 1534, Los Angeles CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| **April 17, 2018** | **Baruch C. Cohen** | /s/ Baruch C. Cohen |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**