**FILED & ENTERED**

APR 24 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY wesley    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CLARK WARREN BAKER,<br><br>Debtor(s). | CHAPTER 7<br><br>Case No.:  2:15-bk-20351-BB<br>Adv No:   2:15-ap-01535-BB<br><br>**ORDER HOLDING DEFENDANT CLARK WARREN BAKER IN CIVIL CONTEMPT AND DIRECTING THAT HE BE INCARCERATED UNTIL HE PERFORMS CERTAIN ACTS, MAKING ADDITIONAL FINDINGS AND IMPOSING ADDITIONAL SANCTIONS** |
| JAMES MURTAGH, M.D.,<br>              Plaintiff(s),<br>     v.<br><br>CLARK WARREN BAKER,<br><br>              Defendant(s). | Date:       April 2, 2019<br>Time:       10:00 AM<br>Courtroom: 1539 |

  The Court conducted a hearing at 10:00 a.m. on April 2, 2019 in Courtroom 1539 of the above-entitled Court on its February 19, 2019 "Order to Show Cause re

-1-

Contempt" [Docket No. 413] (the "February OSC").  Defendant Clark Warren Baker ("Baker"), and his attorney Jessica Ponce, were personally present at that hearing.  Other appearances were as noted in the record at the time of hearing on the February OSC.

The February OSC outlined numerous respects in which Baker had failed to comply with prior orders of this Court (collectively, the "Earlier Orders") and directed Baker to show cause why the Court should not take certain additional steps based on this noncompliance (collectively, the "Additional Steps"), which included without limitation:

1. holding Baker in civil contempt and directing that he be incarcerated until that he performed each of the "Affirmative Acts" outlined in paragraph 8 of the February OSC;

2. referring Baker to the United States Attorney for criminal prosecution for spoliation of evidence;

3. making the "Additional Findings" set forth in paragraph 11 of the February OSC;

4. issuing a report and recommendation to the District Court that Baker be held in criminal contempt and incarcerated for a period of not less than 90 days as punishment for his failure to comply with prior orders of this Court; and

5. striking Baker's answer to complaint and entering judgment for the plaintiff in this action.

February OSC at pp. 4-5.

The February OSC directed Baker to file and serve any response to the February OSC not later than March 19, 2019 and to include in that response his own declaration under penalty of perjury containing the information set forth in paragraphs 7(a) through (t) of the February OSC.  If Baker planned to defend himself against the prospect of being held in civil contempt or having any of the other adverse consequences outlined

in the February OSC order imposed upon him on the ground that it was not possible for him to comply with the Earlier Orders, the February OSC directed Baker to file and serve not later than March 19, 2019 his declaration under penalty of perjury containing the information set forth in paragraphs 9(a) and 9(b) on pages 8 through 10 of the February OSC.

Baker did not file either his declaration containing the information set forth in paragraphs 7(a) through 7(t) of the February OSC or his declaration containing the information set forth in paragraphs 9(a) and 9(b) by March 19, 2019. Instead, counsel for Baker filed a memorandum of points and authorities and a brief declaration in which she authenticated an email that she sent to counsel for the plaintiff passing along hearsay statements made by Baker to her concerning some of the information requested by the February OSC [see Declaration of J. Ponce, filed March 19, 2019, Docket No. 423-1 and Exhibit 1 thereto]. At the hearing held April 2, 2019 on the February OSC, the Court sustained plaintiff's evidentiary objections to the admission of Exhibit 1 to that declaration based on declarant's lack of personal knowledge. Baker attempted to address the required issues belatedly by filing his own declaration on April 2, 2019 [Docket No. 442]; however, inasmuch as that declaration was late-filed, it was not considered by the Court at the April 2 hearing on the February OSC.

Instead, at the April 2 hearing, the Court found that Baker had failed to show cause why the Court should not take the Additional Steps and outlined which of the Additional Steps it intended to take. However, in order to give Baker one final opportunity to demonstrate that the Court should not take these Additional Steps, the Court agreed not to enter an order taking any of the Additional Steps until on or after April 19, 2019, and gave Baker until April 9, 2019 to file and serve a more complete response to the February OSC providing all of the information requested therein and gave plaintiff to and including April 16, 2019 to file and serve a response to anything that Baker might file.

The Court has reviewed and considered the April 9, 2019 "Amended Declaration of Clark Baker in Response to Order to Show Cause re Contempt" [Docket No. 453] (the "Baker Declaration") and the April 16, 2019 "Reply by Plaintiff James Murtagh, M.D.: (A) to Amended Declaration of Clark Baker; and (B) in Support of Court's Order to Show Cause re Contempt; Memorandum of Points and Authorities; Declaration of John Wallace" [Docket No. 462]. Based on its review of the foregoing, the Court hereby makes the following finding of fact and conclusions of law:

1. In the context of a contempt proceeding for failure to comply with a court order, the party alleging that he lacks the present ability to comply with that order bears the burden of proving "categorically and in detail" why he is unable to comply. United States v. Rylander, 460 U.S. 752, 755 (1983).

2. The assertion of a Fifth Amendment privilege is not a substitute for evidence that would assist the party claiming privilege in meeting his burden of production. If a party declines to come forward with evidence demonstrating his inability to comply because he wants to preserve his Fifth Amendment privilege, a court may find that he has failed to carry his burden. Id. at 758-61.

3. Baker cannot claim a Fifth Amendment privilege to refuse to testify on matters as to which he has already offered testimony. McGautha v. California, 402 U.S. 183, 215 (1971) ("a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination).

4. Baker has previously testified on several occasions as to whether he has any electronic devices that contain information relevant to this adversary proceeding, whether he has deleted data from any such devices, whether he has made backups of that data, whether he has produced this data through discovery, etc. He cannot now claim a Fifth Amendment privilege

and refuse to testify with regard to any matter reasonably related to these areas.

5. Baker has failed to demonstrate that he is faced with a substantial hazard of self-incrimination with regard to several of the areas as to which he was asked to provide, but refused to provide, testimony, including (a) whether he paid any money to his prior attorney, and, if so, how much and the source of the money used to make that payment; (b) whether he has any backups of any of the electronic data on his devices; (c) the identify of anyone in possession of any such backups; (d) the location of any such backups; (e) any steps he has taken in an effort to acquire any backups; and (f) any efforts he has made to recover any information that may have been deleted.

6. Baker is not permitted to be the final arbiter or whether a Fifth Amendment privilege is available here.  It is for the Court to decide whether or not he is entitled to assert this privilege, United States v. Neff, 615 F.2d 1235, 1239-40 (9th Cir. 1980), and Baker has not provided enough information to persuade this Court that he is so entitled.

7. Baker has failed to provide sufficient information about his financial condition and work situation to enable the Court to assess whether or not he has the financial ability to pay all or any portion of the sanctions imposed.  It is this Court's understanding that Baker has generally worked as an independent contractor, not as an employee, and his declaration merely states that he is not currently employed.  It does not provide any information as to whether he has been retained on any projects or is currently performing services of any kind for compensation.

In light of the foregoing, and other good cause appearing therefor,

**IT IS ORDERED** as follows:

1. Defendant Clark Baker is hereby held in civil contempt of this Court for:

    a. Violating this Court's October 5, 2017 order [Docket No. 291] (the "October Order") by:

        i. purposefully and intentionally reducing the size of his Hushmail account to 9 Megabytes (MB) from 155 MB of data (the "Data Reduction") and deleting "subaccounts," including murtaghinfo@nym.hush.com; drm@nym.hus.com, cbaker@nym.hush.com and electricfamily@nym.hush.com, after the Court issued the October Order requiring Baker to provide plaintiff's expert with access to this data; and

        ii. changing the username and/or password to jamesmurtaghmdtruth.com without the permission of this Court after delivering access information to plaintiff's expert for the purpose of undermining the requirement of the October Order that plaintiff's expert be given the same access to this site as defendant's expert witness;

    b. Violating this Court's April 13, 2018 "Order on Plaintiff's Motion for Relief Based on Defendant's Violation of this Court's October 5, 2017 Order, Etc." [Docket No. 339], by failing to restore the emails that he removed from his Hushmail account as part of the Data Reduction and failing to restore the subaccounts referenced above; and

    c. Violating this Court's June 26, 2018 Order to Show Cause [Docket No. 361] (the "June Order") by:

        i. Failing to restore all of the data that he deleted;

        ii. Failing to produce all of the restored data to plaintiff's counsel;

      iii. Failing to preserve all of Baker's Data, as defined in the June Order;

      iv. Failing to send out the required Preservation Notices, as defined in the June Order; and

      v. Failing to file the required Compliance Declaration, as defined in the June Order.

2. Defendant Clark Warren Baker shall be remanded to the custody of the United States Marshal's Service of the Central District of California to be detained in custody in this district until he has purged his contempt by demonstrating to the satisfaction of this Court that he has done each of the following (collectively, the "Required Affirmative Acts") other than any of the Required Affirmative Acts as to which he has proven "categorically and in detail" that he is unable to perform such act:

    a. delivered to Mr. Broom all electronic devices containing Baker's Data not currently in the possession of the Los Angeles Police Department that he has not previously turned over to Mr. Broom that are within his possession or custody, under his control or within the possession or custody of someone who is holding the device on his behalf or at his request;

    b. removed any and all encryption of Baker's Data or provided Mr. Broom with all information that he needs to access all encrypted data;

    c. produced to Murtagh the native, electronic version of all documents previously produced by PDF or previously produced in paper form as required by paragraph A of this Court's December 14, 2017 "Order on Plaintiff's Motion for Protective Order re 435 Late Produced Documents, Etc." [docket no. 312];

    d.  delivered to Mr. Broom all of the information and authorizations necessary for him to access any information stored by or for Baker at NetSource; and

    e.  filed and served his own declaration under penalty of perjury containing all of the following information:

        i.  whether any backups and/or copies were ever made of any of the data currently on his devices or formerly on any electronic device that he has used at any time since January 1, 2000;

        ii.  the name of and contact information for the custodian(s) of each and every such backup or copy;

        iii.  the location(s) of any such backups or copies;

        iv.  the name of and contact information for anyone, other than the Los Angeles Police Department, in possession of any of electronic device used by Baker since January 1, 2000 that was not already provided to Mr. Broom (the "Retained Devices");

        v.  the location of each of the Retained Devices;

        vi.  for each electronic device that Baker possessed at one time but claims to no longer possess, the date of the disposition of that device and a description of the disposition (in other words, was the device recycled, and, if so, where?  Was it given away or donated?  If so, to whom?  Was it discarded?  If so, how?  Etc.);

        vii.  with regard to each item in Group One on pages 7 through 8 of Baker's Amended Declaration [Docket No. 452], a description of the manner in which the device was disposed of and the approximate date on which the disposal occurred;

        viii.  with regard to each item in Group Two on pages 8 through 9 of Baker's Amended Declaration [Docket No. 452], a description of:

1. whether Baker is in possession of the device;
2. if Baker is not in possession of the device, who is currently in possession of the device and how that person may be contacted; and
3. if Baker disposed of the device, when the disposal occurred, the manner in which the device was disposed of and the person or entity to whom the device was given for disposal.

ix. an accounting of how much Baker has paid (or how much has been paid on Baker's behalf) to date in attorneys' fees and costs in connection with this adversary proceeding (the dates, payors, amounts and recipients of the payments);

x. the source of any funds that Baker or anyone else used to pay attorneys' fees on Baker's behalf in this adversary proceeding;

xi. the source of the funds that Baker used, or were used on Baker's behalf, to pay sanctions previously awarded in this action;

xii. an accounting of all income, compensation or gifts that Baker has received or that has been paid on his behalf from any source since January 1, 2016;

xiii. a list of all persons who have paid money to or for the benefit of Baker for any purpose since January 1, 2016 and the date and amount of each payment; and

xiv. **whether Baker has performed each of the Required Affirmative Acts and, as to any act that he has not performed, a description that explains "categorically and in detail" why he cannot perform that act.**

3. A warrant for the arrest of defendant Clark Warren Baker shall issue upon a copy of this order.

4. The Court will refer Baker to the United States Attorney for criminal prosecution for spoliation of evidence, including without limitation the Hushmail Data Reduction described in the June Order and the additional data deletions set forth in the Additional Findings below.

5. The Court hereby makes the following Additional Findings:

    a. Baker deleted multiple files on the Baker Devices after the Court issued its September 28, 2018 Order [docket no. 393] (the "September Order"). Specifically, on Device AA3, files were placed in the Recycle Bin, Emails were deleted, and files accessed after the September Order was entered were deleted.

    b. Baker created a Protonmail email account in the name of Sheri Bluebond.

    c. Baker intended to create a website in Judge Sheri Bluebond's name.

    d. Baker represented to Mr. Broom that "the "@nym.hush.com" Email accounts specifically requested in this Court's September 6, 2018 order appointing Neil Broom as its neutral expert [Docket No. 380] (the "Neutral Expert Order") were "dead" and "deleted" and "no longer available for preservation."

    e. The following is a complete listing of the devices that Baker turned over to Mr. Broom:

| Item# | Description | Evidence ID |
|---|---|---|
| 1 | Custom Desktop - Black Case | AA (AA1,AA2,AA3) |
| 2 | MacBook Air Laptop - Model A1466 | AB |
| 3 | Seagate Backup Plus Portable Drive | AC |
| 4 | Western Digital MyBook | AD |
| 5 | iPhone 8 | AE |
| 6 | LaCie Hard Drive Case (Orange) | AF |
| 7 | HP Pavilion dv5000 Laptop | AG |
| 8 | Dell XPS 1340 Laptop - Model PP I7S | AH |

f. Baker has custody or control of additional devices that should have been, but were not, turned over to Neil Broom ("Mr. Broom" or the "Neutral Expert") pursuant to the Neutral Expert Order.

g. Baker has not provided the password and instructions to access the encrypted "Birthday 2.wmv" file (TrueCrypt).

h. Baker destroyed electronic evidence by overwriting data and then reformatting Device AC.

i. Baker has not given the Neutral Expert multiple USB Devices that fall within the definition of "Baker's Devices" and should have been produced to Mr.Broom in response to the Neutral Expert Order for preservation and examination.

j. It took Baker twelve days to comply with the Court's order to turn the Baker Devices over to the Neutral Expert.

k. On Device AC VHD and Device AH, the file "Birthday 2.wmv" was created on April 1, 2017.

l. On Device AC, the file "Birthday 2.wmv" was created on September 11, 2018.

m. The "Birthday 2.wmv" file is actually a TrueCrypt Volume, and, therefore, data could have been added or deleted inside the encrypted volume, while still maintaining the 5.11GB file size.

n. On Device AA3, TrueCrypt was installed on July 1, 2018 and run on the following dates: September 7, September 8, September 11, and September 18, 2018, for a total of 7 runs.

o. The Neutral Expert contacted Baker on December 14, 2018 and again on December 21, 2018, via iPhone Chat (iMessage) and requested his TrueCrypt password; however, Baker provided the wrong password to Mr. Broom on both occasions and claimed that he could not remember the correct password.

p. Baker was running the TrueCrypt application as late as the day he turned his devices over to the Neutral Expert.

q. Baker installed another encryption program named "Axcrypt" on May 5, 2018 on Device AA3. Baker did not provide a list of files that he accessed with the Axcrypt encryption application or the password to unlock these files.

r. Baker is skilled in the use of encryption applications, knew he had used encryption on the Baker Devices and knew the Neutral Expert would need the passwords to access the encrypted files.

s. On Device AA3, Axcrypt was run on the following dates: September 12, September 13, September 14, September 15, and September 17, 2018, for a total of 30 runs.

t. On Device AH, Axcrypt was run on September 17, 2018.

u. On Device AA3, the Neutral Expert detected TrueCrypt Activity and directory names that appear relevant to this adversary proceeding. However, these directories do not appear to be on any of Baker's Devices.

v. On September 7, 2018 at 2:53 P.M., the Neutral Expert emailed Baker's then Attorney Baruch Cohen to ascertain when Baker would meet for the Court Ordered evidence collection.

w. On September 7, 2018 at 4:46 P.M. (less than 2 hours later), Baker ran the TrueCrypt application on Device AA3. Baker mounted (connected to the encrypted volume) labeled "N:" and accessed multiple files (including "Pardo" and "Murtagh hush") on that volume.

x. On September 8, 2018, Baker again ran the TrueCrypt application on Device AA3. He mounted (connected to the encrypted volume) labeled "0:" and accessed multiple files (including "Message Source") on that volume. On this same date, Baker connected to a volume labeled "E:" and accessed directories named "Discovery," "goons," "batcave," Pardo," and "Brown Pardo etc email." These directories do not appear on any of Baker's Devices delivered to Mr. Broom.

y. The directory "batcave" contains security and encryption files.

z. The directory "Brown Pardo etc email" contains "Pardo" and "Murtagh hush" files.

aa. Electronic evidence on Baker's Devices reveals that, on September 11, 2018 at 6:50 AM, Baker connected Device AC (the Seagate Backup Plus Portable Drive) to Device AA3 (the Operating System hard drive in the Custom Desktop Black Case Computer). Baker then copied files (including 335GB of video files) to Device C from 8:35 AM until 9:52 AM.

bb. Device AC shows that on, September 11, 2018 at 10:35 AM, the Master File Table was created, which shows the device was reformatted. By so doing, Baker destroyed the previous data that was on the drive.

cc. In the Neutral Expert Order, Baker was ordered not to destroy, alter, move, or remove any Baker's Data from the Baker Devices. Any data that had been previously stored on Device AC (and then deleted) was permanently destroyed by copying huge video files onto Device AC, by overwriting the old data with the new video files. Baker reformatted Device AC as a further step to destroy the previous contents of the device and prepare the device to hold new data.

dd. On September 11, 2018 at 4:05 PM, Device AC was used to store backup files from Device AH (the Dell XPS 1340 Laptop - Model PP17S). Baker engaged in this activity to generate worthless data for the purpose of thwarting Mr. Broom's forensic examination.

ee. Device AG originally contained a Windows XP Home Operating System. Log files show that, on January 30, 2010, a Linux Operating System (Ubuntu 4.4.1) was installed on the Device. The log files from the Linux Operating 1O System show that the laptop was only used on January 30, 2010, February 10, 2010 and February 13, 2010.

ff. A detailed examination of Device AG's hard drive shows a Linux Swap Partition. The Swap Partition on Device AG shows the following interesting entries:

- An entry with a Date of "25 Apr 2017"
- A Google entry "Safebrowsing-cache.google.com" dated "19 May 2017"
- An entry for a file "/media/Qubes/rhs 8-3-16 james murtagh md FULL" PDF
- An entry for a file "/media/Qubes/8-2 Emory's Answer Crosscomplaint ER Murtagh's Spoofing Emails" PDF
- Many entries in the /media/Qubes directory" [Id.]

-14-

gg. Additional entries on Device AG show "/media/Qubes" running on May 21 19, 2017.

hh. The entries on Device AG for "/media/Qubes" show that the Qubes Operating System was used on this Device; however the Neutral Expert was not provided the USB device with the Qubes Operating System.

ii. Baker was required by the terms of the Neutral Order to provide the Neutral Expert "'with functioning and effective physical and electronic access to Baker's Devices and Baker's Data at all Data Locations."

jj. Baker used the "Qubes" USB Device on Device AH and Device AB (a Virtual Machine running on the MacBook Laptop).

kk. Baker violated the Neutral Expert Order in the following ways:

    i. Baker failed to provide all Baker Devices to Mr. Broom, including those listed in the second of the Expert Reports [docket no. 403] at pp. 25-27, and all electronic devices identified by Baker at his September 18, 2015 examination [docket 380 at page 10, lines 23-25].

    ii. Baker encrypted data that should have been provided to Mr. Broom and failed to provide Mr. Broom with the information necessary to access that data.

    iii. Baker deleted data and destroyed data, including emails and documents relevant to this lawsuit, that he was ordered to turnover to Mr. Broom;

    iv. Baker intentionally took such steps in an effort to thwart Mr. Broom's forensic examination.

    v. Baker denied having any connection with the websites www.baddocjjm.com and www.shakedowndoc.com, and those denials are false.

vi. Baker failed to send the letters that he was required by the terms of the Neutral Expert Order to send to Vendors, Witnesses, and Data Custodians and failed to provide Murtagh's counsel with a copy of all letters he sent.

ll. Baker has not paid any of the monetary sanctions in the amount of $133,319.71 ordered by this Court in its September 28, 2016 Order Imposing Sanctions [Docket No. 393].

mm. Baker failed to reimburse Murtagh for Murtagh's payment in the amount of $22,870.00 towards Mr. Broom's Invoice #1142 (in the amount of $110,113.28), as required by the terms of the Neutral Expert Order.

6. **The Court shall conduct a status conference on Baker's performance of the Required Affirmative Acts on June 11, 2019 at 10:00 a.m. in Courtroom 1539 of the above-entitled Court.  Unless he is in the custody of the United States Marshal at that date and time, Baker shall appear personally at this status conference.**

###

Date: April 24, 2019

Sheri Bluebond
United States Bankruptcy Judge